23CA1794 Peo v Martinez 07-23-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1794
Weld County District Court No. 20CR331
Honorable Allison J. Esser, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Raymond Anthony Martinez,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE HARRIS
Tow and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 23, 2026

Philip J. Weiser, Attorney General, Jaycey DeHoyos, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Shann Jeffery, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Raymond Anthony Martinez, was convicted of sexually assaulting his granddaughter during an overnight visit. On appeal, he contends that the trial court erred by admitting, and the prosecution committed misconduct by eliciting, an expert's testimony about "grooming" and that the court should have dismissed a juror who allegedly fell asleep during a portion of the trial. We reject his contentions and therefore affirm.

## I.    Grooming Testimony

¶ 2    Before Martinez's first trial, which ended in a mistrial, the prosecution endorsed a generalized expert in sexual assault victim dynamics. The expert's report said that she would testify to the concept of "grooming," defined as "gaining the trust of an intended victim . . . through normal or accepted social interactions, or in the case of intra-familial sexual abuse, through [a] normal familial role."

¶ 3    Martinez moved in limine to exclude the expert's testimony entirely or, in the alternative, to preclude any discussion of grooming, on the ground that there was no evidence of grooming in the case. The court denied the motion to exclude the entirety of the expert's testimony, but it agreed that the testimony had to "fit[] the facts of the case." Accordingly, after the victim testified in the first

1

trial, the court ruled that because there was only "minimal" evidence of grooming, testimony on that subject was inadmissible. Later, the court clarified that the expert could testify to an offender's efforts to grow "trust over time" but that she could not use the word "grooming." The prosecutor agreed that she would not "use that word" and would not "go into any of the details of . . . what constitutes grooming."

¶ 4 After the jury failed to reach a verdict in the first trial, the parties proceeded to a second trial. The court explained that it would "maintain [its] ruling from the prior trial" concerning the admissibility of the expert's testimony.

¶ 5 But during the expert's testimony, in response to a question about "[w]hat kinds of things might take place before [an] assault is initiated," the expert said that "when there's a family member involved," there could be "some degree of what is called . . . grooming."

¶ 6 Martinez's counsel objected, though she acknowledged that she "couldn't remember if grooming specifically was [one] of the topics" that the court had precluded during the first trial. The ensuing conversation at the bench was largely inaudible, but it

appears that while neither the parties nor the court had a perfect recollection of the prior order, everyone eventually adopted the prosecution's understanding that the expert could discuss grooming in the context of "favorable relationships, acting appropriately within the role, [and] being kind to other family members," but not "progressive touching." At the end of the discussion, the court asked defense counsel if "there was an objection" or if she had merely raised "a request for clarification." Defense counsel responded, "We'll withdraw the objection." She did not raise any further objection when the expert explained the concept of grooming and how it could affect a child victim's decision not to disclose abuse.

¶ 7 On appeal, Martinez contends that the trial court reversibly erred by allowing the prosecutor to elicit this testimony "in defiance of court order" and the law of the case because of "the high danger of unfair prejudice inherent in the description of someone scheming to commit sexual assault on a child." We agree with the People that by affirmatively withdrawing the objection to this testimony, Martinez waived the claim.

¶ 8    Waiver is "the *intentional* relinquishment of a *known* right or privilege." *People v. Rediger*, 2018 CO 32, ¶ 39 (citation omitted).  A waived claim of error presents nothing for an appellate court to review.  *People v. Kessler*, 2018 COA 60, ¶ 38.  Although a mere failure to object to a proposed course of action does not necessarily constitute a waiver, *Rediger*, ¶ 44, affirmatively agreeing to a proposed course of action with full knowledge of the surrounding facts and circumstances does, *Forgette v. People*, 2023 CO 4, ¶ 34 (The defendant "intentionally relinquished his known right to object to [a] sleeping juror and therefore waived any such objection for appellate review" because his "counsel was fully aware of the sleeping juror but did not object or ask the court to take any action to address the issue.").

¶ 9    Here, Martinez did not simply fail to object to the expert's testimony.  Rather, defense counsel objected, indicating an awareness that the expert's testimony potentially violated the prior order.  But after raising that objection and participating in a discussion with the prosecutor and the court about how to proceed, counsel affirmatively *withdrew* her objection.  And that withdrawal not only expressly indicated her consent to the proposed course of

4

action, *see People v. Tee*, 2018 COA 84, ¶¶ 36-37 (explaining that waiver occurs when counsel recognizes the relevant issue and acquiesces in the court's resolution of that issue), it also removed the issue from the court's consideration, leaving us with nothing to review on appeal, *see People v. Geisick*, 2016 COA 113, ¶ 16 ("When a party specifically removes issues from a trial court's consideration, the party has waived those issues . . . ."); *United States v. Boyd*, 5 F.4th 550, 554 (4th Cir. 2021) ("A party that raises an objection and then explicitly withdraws it waives that objection."). In other words, contrary to Martinez's argument on appeal, he did indeed relinquish a *known* right — his right to enforce the court's prior order — when he agreed with the prosecution and the court that the expert could testify about grooming without violating the order. *Cf. Horton v. Suthers*, 43 P.3d 611, 619 (Colo. 2002) (when a party "expressly acquiesces to conduct by the court or the opposing party," he may not challenge that conduct on appeal); *see also United States v. Seuell*, 135 F.4th 480, 482 (6th Cir. 2025) ("A defendant waives an argument when he 'agree[s] in open court with a judge's proposed course of conduct.'" (citation omitted)).

¶ 10    Nor did Martinez preserve the claim by maintaining his "pretrial objection" to the expert's testimony. By raising and then withdrawing an objection to the grooming testimony, defense counsel took that particular issue off the table. But to the extent Martinez had other complaints about the court's pretrial order, his pretrial objection preserved those claims for appeal (unless those issues, too, arose at trial, in which case he had to preserve them through a contemporaneous objection, *see People v. Dinapoli*, 2015 COA 9, ¶ 19).

¶ 11    Martinez's "unclean hands" argument is even wider of the mark. According to Martinez, under the unclean hands doctrine, the People are not entitled to the "equitable relief" of waiver because they misrepresented the prior order's scope during the bench conference. *See Hogue v. Hogue*, 2025 COA 5, ¶ 44 (The unclean hands doctrine is an "'equitable defense' under which 'a court will not consider a request for equitable relief under circumstances where the acts of the party requesting equitable relief offend the sense of equity to which the party appeals.'" (citation omitted)). Even setting aside that waiver is not an "equitable defense" in a criminal case, that the People are not seeking "equitable relief" on

appeal, and that the unclean hands doctrine does not apply in the criminal context, *see State v. Meints*, No. A-18-401, 2018 WL 6629330, at *3 (Neb. Ct. App. Dec. 18, 2021) (defendant could not assert an unclean hands defense against the prosecution because "'unclean hands' is a civil defense"), the argument is unavailing because we have no basis on which to conclude that the prosecutor knowingly misrepresented the prior ruling to the court. If anything, the misunderstanding about the prior ruling appears to have been a shared one.

¶ 12     Accordingly, we conclude that Martinez waived this claim of error, and we decline to review it. *See People v. Abeyta*, 923 P.2d 318, 321-22 (Colo. App. 1996) (defendant's "withdrawal of . . . claims" in the trial court "left the appellate court with nothing to review"), *superseded by rule on other grounds as recognized in People v. Roy*, 252 P.3d 24, 27 (Colo. App. 2010).

¶ 13     Martinez also contends that the prosecution committed misconduct by eliciting this testimony in violation of its pretrial agreement not to do so.

¶ 14     In evaluating prosecutorial misconduct claims, we engage in a two-step analysis: First, we determine "whether the prosecutor's

7

questionable conduct was improper based on the totality of the circumstances," and second, we determine "whether such actions warrant reversal" under the relevant standard. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010).

¶ 15    Because Martinez did not argue below that the prosecutor had committed misconduct by violating the court's prior ruling, this claim is unpreserved, and we will therefore reverse only if any error was plain, *see id.* at 1097, meaning the error was "obvious" and "so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction," *Hagos v. People*, 2012 CO 63, ¶ 14 (citation omitted).

¶ 16    Martinez says that eliciting the testimony was "prejudicial prosecutorial misconduct" because he was not on notice that he would have to defend against evidence of grooming and because the admission of the expert's testimony wrongly suggested to the jury that it was relevant to his case.

¶ 17    But even assuming the prosecutor committed misconduct by eliciting the testimony, any error was not obvious given that no one accurately remembered the court's prior ruling. More importantly, Martinez does not explain how the brief testimony about grooming

(the expert used the word twice) "cast[s] serious doubt on the reliability of the judgment of conviction." *Hagos*, ¶ 14 (citation omitted).

¶ 18     Martinez was charged with sexual assault on a child. At trial, the fourteen-year-old victim testified that on the night of the assault, she woke up when Martinez began touching her. She said that he unzipped her pants and digitally penetrated her vagina before having intercourse with her and that it felt "hot like fire." The victim's sister, who was sleeping in the same bed, testified that she woke up when she felt the bed "moving" and saw Martinez on top of the victim. And Martinez's DNA was found on the fly area of the victim's jeans and on her underwear.

¶ 19     In our view, any prejudice from the expert's reference to grooming was insignificant in light of the overwhelming, properly admitted evidence that Martinez had intercourse with his teenage granddaughter. *Cf. Pernell v. People*, 2018 CO 13, ¶ 25 (the strength of the properly admitted evidence of guilt is an important factor in determining whether the erroneous admission of evidence prejudiced the defendant); *People v. Draper*, 2021 COA 120, ¶ 92 (when challenged evidence's inculpatory value paled in comparison

9

to that of the properly admitted evidence, any error was harmless), *overruled on other grounds by*, *Garcia v. People*, 2023 CO 30.

¶ 20     In sum, we reject Martinez's request to reverse his conviction based on the grooming testimony or the circumstances around its admission.

## II.     Allegedly Sleeping Juror

¶ 21     On the third day of trial, while the jury was watching a video of the victim's forensic interview, defense counsel informed the court that she believed Juror 3 had fallen asleep.  She asked the court to excuse the juror and declare a mistrial.

¶ 22     The court responded that it had been watching the jury closely and had not seen Juror 3 fall asleep, though it had noticed his head was down.  Still, determining that further inquiry was necessary, the court excused the remaining jurors and questioned Juror 3 about "how [he was] feeling," whether he had "been able to fully pay attention," and whether he had "fallen asleep at all during any portions of [the forensic interview] video."

¶ 23     Juror 3 responded that he felt "great," had "been paying attention," and had not fallen asleep.  He clarified that there was "something in [his] left eye," and he was "trying not to . . . seem like

[he] was falling asleep." He said that he did not need the court to restart the video because he had been able to pay attention to it.

¶ 24 The court denied Martinez's motion to excuse the juror and declare a mistrial. Though it noted that there were "conflicting observations" about whether the juror was sleeping and acknowledged that counsel had raised a concern about Juror 3's ability to stay awake earlier in the trial, the court nevertheless found that Juror 3's explanation was credible. The court noted that Juror 3 did not "pause or hesitate" when he denied sleeping and that "[h]e didn't appear to be acting defensively." In light of the juror's demeanor, the court concluded that it did not "have any reason to disbelieve" him.

¶ 25 On appeal, Martinez argues that Juror 3 committed juror misconduct by falling asleep during trial. He asserts that the trial court clearly erred by finding he was not asleep and instead should have dismissed him and declared a mistrial.

¶ 26 The Due Process Clauses of the United States and Colorado Constitutions guarantee every criminal defendant the right to a fair trial and an impartial jury. *People v. Clark*, 2015 COA 44, ¶ 217; U.S. Const. amends. VI, XIV; Colo. Const. art. II, §§ 16, 25. "If jury

11

misconduct substantially affected the rights of a defendant to a fair and impartial trial, the defendant may be entitled to a new trial." *People v. Garrison*, 2012 COA 132M, ¶ 25. "A juror sleeping during trial may constitute juror misconduct that materially affects the defendant's rights." *People v. Daley*, 2021 COA 85, ¶ 58.

¶ 27 We review juror misconduct claims and the denial of a motion for mistrial for an abuse of discretion. *People v. King*, 121 P.3d 234, 241 (Colo. App. 2005); *People v. Fox*, 862 P.2d 1000, 1003 (Colo. App. 1993). In the face of conflicting evidence regarding an alleged sleeping juror, we defer to the trial court's determinations. *People v. Thurman*, 948 P.2d 69, 72 (Colo. App. 1997).

¶ 28 Here, there was conflicting evidence about whether the juror was sleeping. Martinez's counsel told the court that the prosecutor had alerted her that Juror 3 appeared to be "having an issue staying awake" and that after the issue was brought to her attention, she noticed that the juror's head was down "for an extended period of time." Counsel said that "several times," the juror "all of a sudden, woke up, like he[] . . . [had] dozed off." The prosecutor acknowledged that she raised the issue earlier when she noticed Juror 3's "eyes were cast down" but also noted that "it

12

looked . . . like he may have been writing." The court said that it had not seen Juror 3 fall asleep and instead had seen that "his head was down but he was taking notes."

¶ 29    The court was in an "advantaged position" to resolve this conflict, *Hanes v. People*, 598 P.2d 131, 133 (Colo. 1979), and it did so by directly questioning Juror 3. *See King*, 121 P.3d at 242 (endorsing the practice of questioning an allegedly sleeping juror "to determine whether he thought he had been dozing off, and if so, to what extent"). The court found Juror 3's responses credible based on his demeanor, a finding entitled to deference. *See People v. Romero*, 2024 CO 62, ¶ 1 (explaining that the clear error standard of review is "highly deferential to trial courts" because they are "in a unique position to make firsthand observations related to demeanor and credibility").

¶ 30    In light of the conflicting evidence about whether the juror was sleeping, the trial court's "judgment . . . must be honored," and we will not disturb its findings. *Hanes*, 598 P.2d at 133; *see also Thurman*, 948 P.2d at 72 (explaining that in the face of conflicting evidence regarding an alleged sleeping juror, we defer to the trial court's determinations). We therefore conclude that the court did

not abuse its discretion by declining to excuse the juror and denying the motion for a mistrial. *See King*, 121 P.3d at 241-42.

## III.   Disposition

¶ 31    The judgment of conviction is affirmed.

JUDGE TOW and JUDGE BROWN concur.